## CLIFT *v*. STATE.

### Opinion delivered October 2, 1922.

1. WITNESSES—CROSS-EXAMINATION.—Where, in a prosecution for carnal abuse, the prosecuting witness had detailed the circumstances of the offense, it was not error to refuse to permit defendant to cross-examine her as to what she expected when she accompanied defendant into the woods.

2. WITNESSES—CROSS-EXAMINATION.—Where, in a prosecution for carnal abuse, defendant, in cross-examining the prosecutrix, elicited the fact that she never told any one about the offense until her mother questioned her, it was competent for the State on redirect examination to show that the first information concerning the offense had by her mother was received from defendant's wife.

3. WITNESSES—CROSS-EXAMINATION.—Where, in a prosecution for carnal abuse, the prosecutrix testified that she and a companion on the alleged occasion rode in a car with defendant and another man, and the latter denied that he had ever ridden in a car with defendant and the two girls, it was proper for the State to show the relationship between the witness and the companion of the prosecutrix as affecting his credibility.

4. WITNESSES—CROSS-EXAMINATION—IMPEACHMENT—HARMLESS ERROR.—Where a witness on cross-examination denied having made a certain statement, it was harmless error to permit the State to prove that he made such statement, though a collateral matter, if the alleged statement was too indefinite to be incriminating.

5. RAPE—NAME OF PROSECUTING WITNESS.—An indictment for carnal abuse which charges the offense as committed with a girl named G. when her real name was Q. was not a variance where

it appears that her stepfather was named G., and that she generally passed under the stepfather's name.

6. WITNESS—CROSS EXAMINATION.—Where defendant and another were separately indicted for carnal abuse of two girls, and on defendant's trial the other testified, it was proper to permit the State on cross-examination to ask such witness whether he had not had a similar scrape with another girl.

7. WITNESSES—CONTRADICTION.—Where defendant and another were separately indicted for carnal abuse of prosecutrix and companion alleged to have occurred during an automobile ride, testimony of the other that he never rode in a car with the girl he was charged with having abused may be contradicted by proof that on an occasion not far removed in time from that charged he and defendant went riding in a car with the two girls.

Appeal from Polk Circuit Court; *James S. Steel,* Judge; affirmed.

*Norwood & Alley,* for appellants.

*J. S. Utley,* Attorney General, and *Elbert Godwin,* Assistant, for appellee.

McCulloch, C. J. Appellants, Ray Clift and Brino Cannon, were separately indicted, tried and convicted of the crime of carnal abuse, and their appeals, of course, were separately prosecuted, but the cases against them are so similar in detail that useless repetition will be avoided by disposing of both cases in one opinion.

The two girls with whom the alleged intercourse was had by the two appellants, respectively, were "chums" and resided in the city of Mena, where each of the appellants also resided. Dessie Hall, the girl with whom Clift is charged to have had unlawful intercourse, was fifteen years old at the time the offense was committed, and Bernice Goodwin, the other girl, with whom Cannon is alleged to have had intercourse, was thirteen years old at the time.

According to the testimony adduced by the State, the two offenses occurred on a certain night in December, 1921. Both of the girls testified in each case, and by their testimony it was shown that the two appellants induced them to go riding in an automobile on the night

in question and drove out a few miles from Mena; that after halting the car near the road each couple went a short distance into the woods, and that intercourse between each of the two couples occurred at that time and under those circumstances.

There is a striking similarity between the testimony of the two girls with respect to the circumstances under which the intercourse took place. The car was driven by Clift, and Dessie Hall sat with him on the front seat, while Cannon and Bernice Goodwin sat on the rear seat. Each couple, according to the testimony of the two girls, got out of the car and went into the edge of the woods, in different directions, and after staying out there a short time they returned to the car without having had sexual intercourse; a few moments after returning to the car and getting into it, each of the men took hold of one of the girl's hands and drew her out of the car, and they again went to the woods together and had sexual intercourse, each of the young men placing his coat on the ground for the girls to lie on.

The details of the act of intercourse were so strikingly similar that in the trial of the case below counsel for the appellants emphasized this fact as affecting the credibility of the two girls as witnesses.

Each of the appellants testified in both cases, and they not only denied that they had had sexual intercourse with the girls at any time, but denied that they had ever ridden with them in an antomobile. There was a sharp conflict in the testimony, and there was other testimony of more or less force introduced in the case.

The State introduced a witness in the Cannon case who testified that Cannon admitted that he had had intercourse with Bernice Goodwin.

In the Clift case there were numerous assignments of error with respect to the rulings of the court in limiting the cross-examination of the prosecuting witness. Appellant proposed to ask the witness what she had in mind, or expected would occur, when Clift spread his coat out on the ground, and the court stopped the cross-ex-

amination without permitting her to answer the question. Another instance is where counsel on cross-examination of the prosecuting witness proposed to ask the witness concerning the circumstances under which she told her mother about Clift having sexual intercourse with her.

It appears from the record that the court allowed great latitude to counsel on both sides in the cross-examination of the witnesses; that each of the girls told all about the circumstances under which the acts of intercourse occurred, and it was unnecessary to propound to Dessie Hall the question as to what she expected would occur when the accused spread his coat on the ground. It appears from the record that Clift's counsel was permitted to ask the girl all about the circumstances under which she told her mother of the incident, and why she told her.

Another instance which is the basis of an assignment is that in the cross-examination of Bernice Goodwin in the Clift case there was an offer to ask her the number of trips made in automobiles with the appellants when Clift and Dessie Hall were participants.

We fail to discover a single instance in the record of the court having abused its discretion in placing the cross-examination under due limits.

Another assignment of error in the Clift case is based upon the ruling of the court in permitting the prosecuting witness to state that the first intimation that her mother received concerning the alleged sexual intercourse between her and Clift was received from Clift's wife. It is contended that this was hearsay testimony and was incompetent. Dessie Hall testified at the instance of the State, and told about the act of intercourse with Clift and the circumstances under which it was accomplished. On cross-examination Clift's counsel asked the girl whom she first told about having had intercourse with Clift, and she replied that she had first told her mother. Counsel then asked her whether she told her mother voluntarily or her mother asked her about it, and

she replied that she gave her mother the information concerning the intercourse at her mother's request. Counsel then asked the witness if she had ever told anybody about it before her mother asked about it, and she replied that she had not, and did not intend to tell anybody about it until her mother interrogated her about it.

The purpose of counsel evidently was to discredit the witness by showing on cross-examination that she had never divulged to any one the fact of Clift having had intercourse with her, and that her mother had asked her about it without her first having told it.

Dessie Hall was recalled by the State for further redirect examination, and was asked to state how her mother received information as to the act of intercourse between the witness and Clift, and she replied that her mother had first received information concerning it from Clift's wife. There was no effort made to prove what Clift's wife said to the mother of the prosecuting witness, and of course it would have been incompetent as mere hearsay to prove any such statement, but since appellant's counsel, in an effort to discredit the girl, had called in question the consistency of her statements in regard to her conversation with her mother in which she imparted the information, the State had a right to have the witness clear herself of the apparent inconsistent statement by showing where her mother had first got the information which induced her to ask the girl concerning the intercourse between her and Clift. Appellant would have been entitled to a direction from the court to the jury telling them not to consider any statement made by Clift's wife as substantive proof in the case in regard to whether or not the offense had been committed; but it was not improper to allow the witness to explain the reason why her mother had asked her about it and the source from which the first information had come to her mother concerning the incident.

Objections were made to certain questions propounded to Brino Cannon as a witness in the Clift case, and the rulings of the court are assigned here as error.

Cannon was introduced as a witness by Clift, and he denied that he had ridden in a car with Clift and the girls. This testimony was, of course, in direct contradiction of the testimony of each of the girls. The State then, on cross-examination, asked Cannon questions about his relationship with Bernice Goodwin, and also asked him if he had not made certain admissions to one Lacefield to the effect that he had had intercourse with Bernice Goodwin. To each of the inquiries Cannon entered a denial, and said that he had never had intercourse with Bernice Goodwin, and that he had never ridden with her in a car. Even if the questions were improper, there was no prejudice, because the witness answered in the negative. We are of the opinion, however, that under the circumstances it was competent for the State to cross-examine the witness with reference to his relations with Bernice Goodwin and his admissions concerning the same. He had testified as a witness for Clift directly contradicting the girls, and it was competent to ask him about his relations with Bernice Goodwin as throwing light on the truth of the statement of the girls that they had ridden in a car together on the occasion named and had indulged in sexual intercourse. It was also competent as affecting Cannon's credibility, and we think there was no error committed in this regard.

The State, in cross-examining Cannon, also asked him the question whether or not he had said, on a certain occasion when he was on the train en route to Heavener, Oklahoma, that "Bernice Goodwin was at Heavener, that she was a fine girl, and that he expected to have a good time." He denied that he had made any such statement, and the State called Lacefield as a witness, who testified that Cannon made that statement to him.

Conceding that it was improper to contradict Cannon concerning his statement as to a collateral matter, we do not think there could have been any prejudice resulting from the testimony of the witness. The alleged statement concerning the girl was too indefinite to show that there was any improper relation between the parties.

The only other assignment of error in the Clift case relates to the action of the court in striking out certain parts of appellant's requested instructions on the subject of reasonable doubt. Conceding that the portions stricken out were correct statements of the law, the instructions were complete without those statements, and there was no error in the modifications.

In the Cannon case there were assignments of error similar to those in the Clift case with respect to limitation placed upon the cross-examination of Dessie Hall by counsel for the accused, but what we have said in respect to the other case is sufficient to dispose of those assignments.

The indictment charges in the Cannon case that the intercourse was with a girl named Bernice Goodwin, and she was referred to by that name throughout the trial. On cross-examination of the witness she stated that she was the daughter of Mrs. Goodwin by a former marriage to a man named Quinn, that her real name was Quinn, but that since her mother's marriage with Goodwin she had generally passed under that name, and was registered at school under the name of Bernice Goodwin. It is contended now by counsel for appellants that there is a variance in the proof and the allegation in that the indictment charges the name of the girl to be Bernice Goodwin, whereas her real name is Bernice Quinn. The proof to the effect that the girl is commonly known by the name of Bernice Goodwin does not constitute a variance from the charge in the indictment, for if she was commonly known by that name, it was sufficient to describe the offense by designating her under that name in the indictment.

Error is assigned in the ruling of the court in permitting the State to interrogate Cannon on cross-examination with reference to his having sexual intercourse with another girl under the age of consent a few years before the incident now under investigation occurred. The form of the question was as follows: "I will ask

you if it isn't true that you got into a similar scrape four years ago with a young lady by the name of Eloise Pullen?'' Appellant answered as follows: ''No sir; O, yes sir; it didn't go into court.'' In the closing argument the prosecuting attorney made a statement to the effect that a man who admits having had experience with another girl was not entitled to credit as a witness, and objection was made to this argument.

It was competent for the State to propound the question for the purpose of testing the credibility of the witness, and the evasive answer given by the witness justified the prosecuting attorney in commenting upon it in the argument.

The State was permitted, over appellant's objection, to prove by a witness, Ode Bates by name, that on a certain occasion, not far removed in point of time from the date of the charge in the present case, the witness went automobile riding in a car with Dessie Hall, and that Cannon and Bernice Goodwin were also in the car. The witness testified that they drove out on one of the public roads out of Mena one night, but that nothing unusual occurred on the trip. Cannon denied that he ever rode in a car with Bernice Goodwin, and the testimony of Bates was competent, not only for the purpose of contradicting Cannon, but as substantive proof of the relations between Cannon and Bernice Goodwin as an independent fact tending to show whether or not they had had sexual intercourse.

There are other assignments of error concerning the cross-examination of Cannon, and also testimony introduced to impeach him by proving contradictory statements. It is sufficient to say generally, in answer to the contention of counsel, that it was competent to inquire of the accused about every matter affecting his credibility, or concerning the relationship between him and the prosecuting witness, Bernice Goodwin, and it was also competent to prove by other witnesses any fact or circumstance which threw light on the latter question.

After careful consideration of the record in each of the cases, we have reached the conclusion that there was no prejudicial error, and the judgment in each case is therefore affirmed.